**SO ORDERED.**

**SIGNED March 27, 2006.**



_____
**GERALD H. SCHIFF**
**UNITED STATES BANKRUPTCY JUDGE**
_____


UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF LOUISIANA

IN RE:

RONALD MORRIS DAVIS andCASE NO. 02-20809
BEULAH JEAN DAVIS,

    DebtorsCHAPTER 7
---------------------------------------------------------------

CARLA NATALIE DAVIS

    Plaintiff

VERSUSADV. PROCEEDING NO. 04-2028

RONALD MORRIS DAVIS and
BEULAH JEAN DAVIS,

    Defendants
---------------------------------------------------------------
REASONS FOR DECISION
---------------------------------------------------------------

    Ronald Morris Davis ("Ronald") and Beulah Jean Davis ("Beulah," and with Ronald, "Debtors") filed a voluntary petition

for relief under chapter 13 of the Bankruptcy Code[1] on July 16, 2002. The case was subsequently voluntarily converted to a case under chapter 7. Carla Natalie Davis ("Carla") has filed this **COMPLAINT TO DETERMINE THAT DEBT IS NOT DISCHARGED** ("Complaint"). A trial on the Complaint was held on September 8, 2006. After receiving evidence, the matter was taken under advisement.

## JURISDICTION

The case has been referred to this court by the Standing Order of Reference entered in this district which is set forth as Rule 83.4.1 of the Local Rules of the United States District Court for the Western District of Louisiana. No party in interest has requested a withdrawal of the reference. The court finds that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

These Reasons for Decision constitute the Court's findings of fact and conclusions of law pursuant to Rule 7052, Federal Rules of Bankruptcy Procedure.

## FACTUAL BACKGROUND

Nathan Joseph Davis, Ronald and Carla's father, died in 1990. Carla was a minor at the time. Several months later, Clara Davis ("Clara"), Carla's mother and Ronald's stepmother, along with Ronald and Beulah, petitioned the state court to grant custody of

---

[1] Title 11, United States Code. References herein to sections of the Bankruptcy Code are shown as "section ___."

Carla to Ronald and his wife Beulah as Clara's ill health would not permit her to care for the child. On February 14, 1991, a Judgment was entered granting "the care, custody, and control" of Carla to Ronald and Beulah. That Judgment was silent, however, regarding the extent to which Ronald and Beulah had authority to deal with Carla's property.

Carla was the named beneficiary of her father's $25,000 life insurance policy. She was also entitled to receive benefits of her father's account with the Louisiana Teacher's Retirement System in the amount of approximately $649 per month. Ronald and Beulah received both the life insurance proceeds and the retirement proceeds on Carla's behalf.

Carla testified that she was given $100 per month of the proceeds for approximately one year. When she reached the age of majority and left the care of the Debtors, she discovered that none of the life insurance proceeds or retirement proceeds remained.

Carla sued the Debtors in state court, and, on October 18, 2001, obtained a judgment against them for $25,000 and $11,000, plus legal interest from March 21, 1991, and September 17, 1993, respectively ("2001 Judgment").

Carla alleges that the debt against the Debtors arising from the 2001 Judgment is non-dischargeable as it was the result of the Debtors' defalcation while acting in a fiduciary capacity. The

Debtors claim, however, that they used the funds for the care of Carla as well as to save the home where Carla's mother lived and where Carla and her mother now reside. The Debtors testified that there was an agreement between themselves and Clara to use a portion of the funds to pay certain tax liens and judgments which had been placed on the property. The Debtors acknowledged that they did not receive the appropriate court authority to use Carla's funds in this manner. The Debtors also allege that they used some of the funds to get Carla's car out of impoundment, to repair the engine of her car and paid for Carla's dental and hospital insurance.

## LAW AND ANALYSIS

Pursuant to the provisions of section 523(a)4), a chapter 7 discharge does not release an individual debtor from any debt "for fraud or defalcation while acting in a fiduciary capacity . . . ." This section suggests that the following inquiries need be made:

--- did the debt arise from a defalcation?

--- did the Debtors occupy a fiduciary position?

The first step in the court's analysis is the consideration of the scope of the statutory terms "defalcation" and "fiduciary" within the meaning of section 523(a)(4). With respect to "defalcation," the court in <u>Matter of Schwager</u>, 121 F.3d 177, 184 (5th Cir. 1997), observed:

Page 4

A line of Fifth Circuit cases, beginning with <u>Moreno v. Ashworth</u> (<u>In re Moreno</u>), 892 F.2d 417, 422 (5th Cir. 1990), have defined defalcation as a "willful neglect of duty, even if not accompanied by fraud or embezzlement." [Citations omitted.]

And, with respect to the "type of intent or mental state . . . necessary to qualify as defalcation," [121 F.3d at 185], the court declared:

> While defalcation may not require actual intent, it does require some level of mental culpability. It is clear in the Fifth Circuit that a "willful neglect" of fiduciary duty constitutes a defalcation-essentially a recklessness standard.

121 F.3d at 185.

And as to whether a person occupies a fiduciary capacity within the meaning of section 523(a)(4), the Fifth Circuit, in the case of <u>In re Tran</u>, 151 F.3d 339, 342 (5th Cir. 1998), observed:

> Consistent with the principle that exceptions to discharge are to be narrowly construed, the concept of fiduciary under §523(a)(4) is narrower than it is under the general common law. Under §523(a)(4), "fiduciary" is limited to instances involving express or technical trusts. The purported trustee's duties must, therefore, arise independent of any contractual obligation. The trustee's obligations, moreover, must have been imposed prior to, rather than by virtue of, any claimed misappropriation or wrong. Constructive trusts or trusts *ex malificio* thus also fall short of the requirements of §523(a)(4). [Footnotes omitted.]

The court must first determine whether the Debtors occupied a fiduciary capacity with respect to Carla. Plaintiff seems to just assume that there was a fiduciary relationship in place and makes no argument nor produces no evidence to support that assumption.

Page 5

The Debtors were "granted the care, custody and control" of Carla. There was no tutorship or other statutory proceeding which by law imposes a stronger duty of care. Tutorship proceedings, in fact, require security by the tutor to insure faithful performance of duty. See, e.g., La. C.C.P. art. 4131. The Plaintiff has not cited, nor has the court been able to locate, any statutory basis to support the conclusion that the Debtors occupied a fiduciary relationship with Carla.

The Plaintiff has failed to prove the existence of either an express or technical trust. As there exists no evidence of a fiduciary relationship within the guidelines set forth by the Fifth Circuit in Tran, the complaint pursuant to section 523(a)(4) must fall.

The next issue is whether Carla, the Plaintiff, has met her burden of proving that the Debtors willfully neglected their duty. The court finds that she has not done so.

While the Debtors did not obtain court authority to use the life insurance proceeds in order to pay liens and judgments against property not owned by Carla, the evidence suggests that the funds were not utilized for their benefit, but for the benefit of Carla's mother and to save what was considered the family home. Ronald testified that the amounts paid on the mortgage and to the IRS totaled approximately $18,000. Further, it should go without saying that the use of Carla's funds to pay for her car was also

reasonable.

Carla testified that she resided with the Debtors for over two and a half years and was not required to pay rent, utilities or food. She also acknowledged that the Debtors paid approximately $1,800 to repair her car as well as additional funds to get her car out of impoundment. The Debtors also paid for her dental and medical insurance.

The Debtors, as custodian of Carla and her property, used her funds without appropriate court authority. For this mistake, they were cast in the 1991 Judgment. This court concludes, however, that although they used her funds to reimburse themselves for money spent on her account, absolutely no evidence was presented that the Debtors used her funds for their own personal benefit nor did they willfully neglect their duty to use the funds for her care and benefit.

Although not raised in pre-trial pleadings or at trial, the court finds it necessary to address the language of the 1991 Judgment, as the first ordered paragraph therein concludes with the language "based upon Ronald Morris Davis and Beulah J. Davis' defalcation while acting in a fiduciary capacity." While at first blush this might suggest an inability to re-litigate such issue on the basis of collateral estoppel[2], this court observes that the

---

[2]Collateral estoppel (issue preclusion) applies in bankruptcy dischargeability proceedings, Grogan v. Garner, 498

trial court did not render written reasons nor was a transcript of her oral reasons submitted in evidence.  It appears that the quoted language was included by counsel as a prophylactic measure in the event the Debtors sought bankruptcy relief.  The quoted language, however, is merely conclusory and is not sufficient to raise the issue of collateral estoppel.

For these reasons, the court finds that the Plaintiff has failed to sustain her burden of proof and the Complaint must be **DISMISSED**.  A separate order in conformity with the foregoing reasons has this day been entered into the record of this proceeding.

###

---

U.S. 279 (1991), while *res judicata* (claim preclusion), does not, Brown v. Felsen, 442 U.S. 127 (1979).