

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

CARLA NATALIE DAVIS

VERSUS

RONALD MORRIS DAVIS and
BEULAH JEAN DAVIS

CIVIL ACTION NO. 06-0628

JUDGE DONALD E. WALTER

MAGISTRATE JUDGE WILSON

ORIGINALLY FILED
IN THE UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF LOUISIANA

IN RE:
RONALD MORRIS DAVIS and
BEULAH JEAN DAVIS

CASE NO. 02BK20809
CHAPTER 7

CARLA NATALIE DAVIS

VERSUS

RONALD MORRIS DAVIS and
BEULAH JEAN DAVIS

ADV. PROC. NO. 04AP2028

## MEMORANDUM RULING

Before this Court is Carla Natalie Davis' appeal [Doc. #7] from the Bankruptcy Court's Judgment, entered on March 27, 2006, dismissing with prejudice Carla Natalie Davis' Complaint to Determine That Debt Is Not Discharged. After having reviewed the entire record on appeal and the appellant's brief,[1] this Court finds that the money judgment rendered in the Fourteenth Judicial District Court in and for Calcasieu Parish, Louisiana, in favor of Carla Natalie Davis ("Carla Davis")

---

[1] Appellees did not file an appellate brief.

and against Ronald Morris Davis and Beulah Jean Davis ("the Davises" or "the Debtors") is not discharageable in bankruptcy. For the reasons that follow, the Bankruptcy Court's March 27, 2006 Judgment is **REVERSED** and **REMANDED** to the Bankruptcy Court for determination consistent with this Ruling.

## STATEMENT OF THE CASE

### A. Factual Background.

Nathan Joseph Davis ("Nathan Davis") died on November 19, 1990. His survivors were his wife, Clara Davis ("Clara"), their thirteen year old minor daughter, Carla Davis, and his son and daughter-in-law, Ronald and Beulah Davis. Several months after Nathan Davis died, Clara and the Davises petitioned the state court to grant custody of Carla Davis to the Davises as Clara's poor health would not permit her to care for the child. On February 14, 1991, a Judgment (the "1991 Custody Judgment") was entered granting the Davises "the care, custody, and control" of Carla Davis.

Carla Davis was the named beneficiary of her father's $25,000 life insurance policy. She was also entitled to receive benefits from her father's account with the Louisiana Teachers' Retirement System in the amount of approximately $649 per month. The Davises applied for, and received, the life insurance policy check in the amount of $25,000.00 issued by Washington National Insurance Company, and made payable to "Ronald & Beulah Davis, Caretakers, Custodians & Controllers of the Estate of Carla N. Davis, Minor." The Davises also received, on behalf of Carla Davis, the retirement proceeds from the Louisiana Teachers' Retirement System.

Carla Davis was given $100 per month of the proceeds for approximately one year. When she reached the age of majority and left the care of the Davises, she found that none of the life

insurance proceeds or retirement benefits remained.

Carla Davis filed suit for an accounting in the Fourteenth Judicial District Court, Calcasieu Parish, Louisiana. The matter came on for trial on October 16, 2001. At the conclusion of trial, a judgment was rendered in favor of Carla Natalie Davis and against Ronald Morris Davis and Beulah Jean Davis, "in solido, in the amount of $25,000.00 together with legal interest from March 21, 1991, based upon [the Davises'] defalcation while acting in a fiduciary capacity," and "in solido, in the amount of $11,000.00 together with legal interest from September 17, 1993, based upon [the Davises'] defalcation while acting in a fiduciary capacity" ("2001 Judgment").

B.   **Procedural Background.**

The Davises filed a voluntary petition for relief under Chapter 13 of the Bankruptcy Code on July 16, 2002. The case was subsequently voluntarily converted to a case under Chapter 7. Carla Davis filed a Complaint to Determine That Debt is Not Discharged ("Complaint") with regard to the 2001 Judgment. A trial on the Complaint was held before the Bankruptcy Court on September 8, 2006. After receiving evidence, the matter was taken under advisement, and written Reasons for Decision were issued ("Reasons for Decision").

Before the Bankruptcy Court, Carla Davis alleged that the Davises' debt arising from the 2001 Judgment is non-dischargeable as it was the result of the Debtors' defalcation while acting in a fiduciary capacity. The Debtors asserted that they used the insurance and retirement proceeds for the care of Carla Davis as well as to save the home where Carla Davis' mother, Clara, lived, and where Carla Davis and her mother now reside. The Davises testified that there was an agreement between themselves and Clara to use a portion of the funds to pay certain tax liens and a judgment totaling approximately $18,000.00 that had been placed on the property. The Davises acknowledged

3

that they did not receive appropriate court authority to use Carla Davis' funds in this manner. The Davises further alleged that they used some of the funds to retrieve Carla Davis' car from impoundment, to repair the engine of her car and to pay for Carla Davis' dental and health insurance.

To determine whether the debt based on the 2001 Judgment was non-dischargeable under 11 U.S.C. § 523(a)(4)[2], the Bankruptcy Court examined two issues: (1) whether the Davises occupied a fiduciary capacity in relation to Carla Davis; and (2) whether the Davises' debt to Carla Davis arose from a defalcation. The Bankruptcy Court decided both issues in the negative, found the debt to be discharged and dismissed the Complaint with prejudice.

With regard to the issue of whether the Davises occupied a fiduciary capacity with respect to Carla Davis, the Bankruptcy Court found that Carla Davis had failed to prove the existence of an express or technical trust under In re Tran, 151 F.3d 339, 342 (5th Cir. 1998). Reasons for Decision, pp. 5-6. The Bankruptcy Court concluded because "there exists no evidence of a fiduciary relationship within the guidelines set forth in Tran[,supra], the complaint pursuant to section 523(a)(4) must fall." Id. at p. 6.

As to whether the debt arose from a defalcation, the Bankruptcy Court determined that Carla Davis failed to meet her burden of proving that the Debtors willfully neglected their duty. Id. Rather, according the Bankruptcy Court, the evidence showed that the Debtors used the insurance and retirement funds for the benefit of Carla Davis' mother to save what was considered the family home, and for the benefit of Carla Davis in the form of car repairs of approximately $1,800.00, dental and medical insurance and basic subsistence. Id. The Bankruptcy Court determined that such

---

[2]Title 11, section 523(a)(4) provides that a debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny" is not dischargeable in bankruptcy.

4

use of the proceeds was reasonable. Id. at pp. 6-7. The court further found sua sponte that the "conclusory" language of the 2001 Judgment finding liability "based upon [the Davises'] defalcation while acting in a fiduciary capacity" was not sufficient to raise the issue of collateral estoppel. Id. at pp. 7-8.

For the reasons that follow, this Court disagrees with the Bankruptcy Court's findings.

## LAW AND ANALYSIS

### A. Jurisdiction and Standard of Review.

This Court has jurisdiction over Carla Davis' appeal from the Bankruptcy Court's Judgment pursuant to 28 U.S.C. § 158(a). On appeal, the district court may affirm, modify or reverse a bankruptcy court's judgment, or remand with instructions for further proceedings. Fed. R. Bankr. Proc. 8013. Findings of fact may not be set aside absent clear error, and "due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses." Id. Questions of law are reviewed de novo. In re Berryman Products, Inc., 159 F.3d 941, 943 (5th Cir. 1998).

### B. The Davises' Debt Arising Out of the 2001 Judgment is Not Dischargeable.

As a general policy, bankruptcy law favors permitting a debtor to discharge his debts, thereby giving him a "fresh start." In re Tran, 151 F.3d at 342, citing Lines v. Frederick, 400 U.S. 18, 19, 91 S.Ct. 113, 113-14, 27 L.Ed.2d 124 (1970) (basic purpose of the Bankruptcy Act is "to give the debtor a 'new opportunity in life and a clear field for future effort, unhampered by the pressure and discouragement of pre-existing debt.'"). However, one of the exceptions to this general policy is at issue in this appeal. Section 523(a)(4) provides that debts incurred through "fraud or defalcation while acting in a fiduciary capacity" are not dischargeable in bankruptcy.

1. <u>Fiduciary Capacity</u>.

Under the facts of this case, to determine whether the debt incurred by the Debtors as a result of the 2001 Judgment falls within the exception of §523(a)(4), this Court need only address two issues: (1) whether the debt arose while the Davises were acting in a fiduciary capacity; and (2) whether the debt in question was incurred by defalcation.

As noted by the Bankruptcy Court, the Fifth Circuit, in <u>Tran, supra</u>, examined whether a person occupies a fiduciary capacity within the meaning of §523(a)(4), and stated that:

> Consistent with the principle that exceptions to discharge are to be narrowly construed, the concept of fiduciary under § 523(a)(4) is narrower than it is under the general common law. Under § 523(a)(4), "fiduciary" is limited to instances involving express or technical trusts. The purported trustee's duties must, therefore, arise independent of any contractual obligation. The trustee's obligations, moreover, must have been imposed prior to, rather than by virtue of, any claimed misappropriation or wrong. Constructive trusts or trusts <u>ex malificio</u> thus also fall short of the requirements of § 523(a)(4). [Footnotes omitted].

151 F.3d at 342. Based on the <u>Tran</u> Court's discussion of the concept of "fiduciary" under §523(a)(4) and Carla Davis' lack of argument or evidence showing that the Debtors being "granted the care, custody and control" of Carla Davis placed the Debtors in a fiduciary relationship with Carla Davis, the Bankruptcy Court found the Davises were not acting in a fiduciary capacity.

However, as noted in <u>Collier on Bankruptcy</u>, §523.10[1][c]:

> Certain relationships are generally recognized as involving fiduciary obligations within the meaning of section 523(a)(4). Bank officers, executors and administrators, **guardians**, receivers, the president of a private corporation entrusted with funds for a particular purpose, the sole manager of a joint venture's affairs, and, of course, other technical trustees have been held to be acting in a fiduciary capacity within the meaning of this provision.

Emphasis added; citations omitted.³ In the case sub judice, the Bankruptcy Court noted that although the Debtors were "granted the care, custody and control" of Carla Davis, "[t]here was no tutorship or other statutory proceeding which by law imposes a stronger duty of care." Reasons for Decision, p. 6. Further, the 1991 Custody Judgment was silent regarding the extent to which the Davises had authority to deal with Carla Davis' property. Id. at p. 3.

The Tran Court noted that the central focus of the inquiry under §523(a)(4) is "whether the alleged fiduciary exercises actual control over the alleged beneficiary's money or property." 151 F.3d at 345. The issue of control "has always been the critical fact looked to by the courts in imposing this high level of responsibility." Id. citing Matter of Bennett, 989 F.2d 779, 789 (5th Cir. 1993). In the case sub judice, the life insurance proceeds were issued to Carla Davis in the form of a check made payable to "Ronald & Beulah Davis, Caretakers, Custodians and Controllers of the Estate of Carla N. Davis, Minor." Similarly, the Davises obtained Nathan Davis' retirement benefits on Carla Davis' behalf. There is no question that the Debtors exercised actual control over the life insurance proceeds and retirement benefits that belonged to Carla Davis.

This Court finds that the trial court's granting of the care, custody and control of Carla Davis to the Davises is a tutorship in all but label, and therefore, is a relationship "generally recognized as involving fiduciary obligations" sufficient to fall within §523(a)(4). Collier on Bankruptcy, §523.10[1][c].

---

³ See also In re Beach, 13 B.R. 759, 762 (Bankr.M.D.Ala. 1981) ("[t]here is no doubt that Beach, as appointed guardian for his two children, bore a strong relationship of trust and confidence to them, one of the highest fiduciary duties. . . . Beach held or controlled property admittedly not his own, and which belonged to either vested or contingent remaindermen including his wards, and which he undertook to manage and hold for others.").

2.  Defalcation.

In Matter of Schwager, 121 F.3d 177, 184 (5th Cir. 1997), the Fifth Circuit found that, jurisprudentially, defalcation has been defined as "willful neglect of duty, even if not accompanied by fraud or embezzlement." Citations omitted. Further, as to the "type of intent or mental state" required to qualify as defalcation, the Fifth Circuit has found that:

> While defalcation may not require actual intent, it does require some level of mental culpability. It is clear in the Fifth Circuit that a "willful neglect" of fiduciary duty constitutes defalcation – essentially a recklessness standard.

Id. at 185.

The Bankruptcy Court in the case sub judice found that Carla Davis failed to meet her burden of proving that the Debtors willfully neglected their duty to her. To reach this conclusion, the Bankruptcy Court weighed the evidence presented by the parties regarding the Debtors' use of the life insurance proceeds and retirement benefits. The Court finds that collateral estoppel precluded such an evaluation.

Neither party raised the issue of the preclusive effect of the state court judgment finding the Debtors liable to Carla Davis "based upon [the Davises'] defalcation while acting in a fiduciary capacity." The United States Supreme Court has held that collateral estoppel, or issue preclusion, principles apply in bankruptcy dischargeability proceedings. Grogan v. Garner, 498 U.S. 279, 285 n. 11, 111 S.Ct. 654, 658 n. 11, 112 L.Ed.2d 755 (1991). "In such proceedings, [p]arties may invoke collateral estoppel in certain circumstances to bar relitigation of issues relevant to dischargeability, although the bankruptcy court retains jurisdiction to ultimately determine the dischargeability of the debt." Schwager, 121 F.3d at 181 (internal quotations omitted). This Court, acting as an appellate court, reviews de novo the Bankruptcy Court's decision to give full faith and credit to a state court

judgment. Matter of Miller, 156 F.3d 598, 601 (5th Cir. 1998) (citations omitted).

Because the 2001 Judgment was entered by a Louisiana state court, Louisiana rules of preclusion apply. Id. Louisiana Revised Statute 13:4231 states that a valid and final judgment is conclusive between the same parties. The principle of issue preclusion under Louisiana law is set forth in La. R.S. 13:4231(3), which provides that "[a] judgment in favor of either the plaintiff or the defendant is conclusive, in any subsequent action between them, with respect to any issue actually litigated and determined if its determination was essential to that judgment." Therefore, the three requirements for issue preclusion are: (1) a valid and final judgment; (2) identity of the parties; and (3) an issue that has been actually litigated and determined if its determination was essential to the prior judgment. Sanchez v. Georgia Gulf Corp., 853 So.2d 697, 706 (La.App. 1 Cir. 2003). The Fifth Circuit has held that because §4231 is modeled on federal doctrine and the RESTATEMENT OF JUDGMENTS, the court may consult federal jurisprudence for guidance when interpreting §4231. In re Keaty, 397 F.3d 264, 271 (5th Cir. 2005) (citations omitted).

It is undisputed that the 2001 Judgment is a "valid and final judgment." It is further undisputed that the parties to the lawsuit giving rise to the 2001 Judgment are the same as those presently before this Court. The state court's determination of whether the Davises committed defalcation was essential to finding the Davises liable to Carla Davis. Thus, the only issue remaining with regard to collateral estoppel is whether the issue of defalcation has been "actually litigated and determined."

The Bankruptcy Court found that despite a specific determination that the Davises' liability to Carla Davis was "based upon [the Davises'] defalcation while acting in a fiduciary capacity," such language was merely conclusory and, therefore, insufficient to trigger collateral estoppel as "the trial

9

court did not render written reasons nor was a transcript of [the court's] oral reasons submitted in evidence." This Court disagrees.

"The requirement that an issue be 'actually litigated' for collateral estoppel purposes simply requires that the issue [be] raised, contested by the parties, submitted for determination by the court, and determined." Keaty, 397 F.3d at 272. There is no question that Carla Davis filed suit in the Fourteenth Judicial District Court wherein Carla Davis raised the issue of the Davises' improper use of the life insurance proceeds and social security benefits payable to Carla Davis while a minor. This issue was clearly contested by the parties before the state court, as it remained contested before the Bankruptcy Court. According to the 2001 Judgment, the state court lawsuit came on for trial on October 16, 2001, and after considering "[t]he law, evidence, testimony, and arguments of counsel," the court found in favor of Carla Davis "for the reasons assigned in open court." Further, it is undisputed that the Fourteenth Judicial District Court heard the same evidence as that presented to the Bankruptcy Court. Accordingly, this Court finds that the issue of whether the Davises committed a defalcation has been "actually litigated and decided." Thus, collateral estoppel precluded the Bankruptcy Court from failing to give the state court judgment as to the issue of defalcation full faith and credit.

## CONCLUSION

For the reasons stated above, this Court finds that (1) the Davises were acting in a fiduciary capacity in relation to Carla Davis under §523(a)(4), and (2) the 2001 Judgment finding the Davises liable to Carla Davis based upon their defalcation while acting in a fiduciary capacity should be given full faith and credit under the principles of issue preclusion. Accordingly, the exception to dischargeability found in §523(a)(4) applies, and the Bankruptcy Court's Judgment of March 27,

2006, dismissing with prejudice Carla Davis' Complaint to Determine That Debt Is Not Discharged is **REVERSED** and **REMANDED** to the Bankruptcy Court for determination consistent with this Ruling.

**THUS DONE AND SIGNED,** in Shreveport, Louisiana, this 14th day of August, 2007.

*[signature]*
DONALD E. WALTER
UNITED STATES DISTRICT JUDGE